## Leo J. Percival v. Lee K. Fletcher

[155 A2d 737]

May Term, 1959

Present: **Hulburd, C. J., Holden, Shangraw and Barney, JJ. and Morrison, Supr. J.**

Opinion Filed November 3, 1959.

*Frederick J. Fayette* and *George W. F. Cook* for the defendant.

*Lisman & Lisman* for the plaintiff.

**Barney, J.** This is a suit in chancery whereby the plaintiff, Leo J. Percival, seeks to restrain the defendant, Lee K. Fletcher, from crossing the land of the plaintiff. The defendant claims a right of way over the property. Evidence was taken and findings made by the chancellor. A decree was entered restraining the defendant from further use of the claimed right of way. The case is here on defendant's exceptions.

The findings may be summarized as follows: The parties own adjoining properties in the village of East Middlebury. Plaintiff's grandparents acquired the parcel now owned by him from one C. E. Russell in 1897. Title passed from them to plaintiff's parents, then to him. Russell, the grantor, then owned the adjoining parcel and reserved a driveway in his deed to plaintiff's grandparents in the following language:

> "always reserving a driveway from my barnyard easterly across said premises to the Mill Road, said driveway to be and remain unobtstructed."

In 1920 Russell conveyed this retained parcel, together with the appurtenances thereto, to defendant's predecessor in title. No issue is raised by either party concerning the chain of title to either parcel involved here. The premises of the plaintiff are at the corner of Mill Road and Main Street, bounded on the south by the Middlebury River. The defendant's premises

also front on Main Street and are immediately westerly of plaintiff's property, divided from it by a common boundary. The controversy relates to a driveway running easterly from the rear of defendant's premises across the rear of plaintiff's parcel to Mill Road. The rear of both plaintiff's and defendant's premises have direct access to Main Street by means of separate driveways wholly on their own premises. From 1927 to August, 1956, there was no well defined roadway or right of way over the rear of plaintiff's property, and since 1927 there has been no travel from defendant's land over plaintiff's premises except for an occasional pedestrian. In 1932 a controversy arose over the use of plaintiff's property for right of way purposes between the then owners. Plaintiff's predecessors in title placed clotheslines across the back of the property. In 1933 and 1934 the lines put up were cut on several occasions by the then owner of defendant's premises. Since 1941 a stone wall has extended from the rear of the house on plaintiff's property south some 20 or 25 feet. In the 1940's a tenant of the plaintiff used the back of the property to park cars and trucks, and eight or ten years ago a cesspool with connecting pipes was placed in the backyard of plaintiff's property. In August of 1956, while plaintiff was in New York, the defendant caused one hundred square yards of gravel to be dumped on the back yard of plaintiff's property, had trees and brush cut, removed rocks and boulders, and extended her driveway from her own land easterly across plaintiff's property. Although the findings do not state, both the pleadings and the testimony in the case reveal that it was undisputed that the right of way or driveway as claimed by the defendant passed within a foot or so of the rear of the house on plaintiff's property. The chancellor's concluding finding was that the plaintiff, his tenants and predecessors in title, had occupied and possessed the entire back yard of his premises between the southerly side of his home and the Middlebury River, and between the Grist Mill Road and the division line between plaintiff's and defendant's land, continuously, uninterruptedly, openly, notoriously, exclusively and under a claim of right from the year 1927 until August of 1956 when interrupted by the acts of the defendant here complained of.

■ ˙ The defendant excepted to certain of the chancellor's findings, but elected to omit dealing with these exceptions in her brief, thereby waiving them. *State* v. *Haskins*, 120 Vt 288, 296, 139 A2d 827. The findings therefore stand here unchallenged.

The defendant excepted to the chancellor's failure to comply with certain of her requests for findings and enumerates in her brief five of these exceptions for decision here. These suggested findings were propositions of fact and law for which the defendant claimed support in the evidence, and may be summarized as follows: There was no evidence in the case that there was any use of the plaintiff's land by any titleholder inconsistent with ownership of the driveway easement in question by defendant or her predecessors in title. There was no evidence in the case that the erecting of the clothesline or lines across the driveway prevented the use of the driveway by anyone claiming ownership. Except for the two instances of clothesline cutting there was no credible evidence that there was any use of the driveway by the plaintiff or prior owners or tenants hostile to the defendant or her predecessors in title until August of 1956. After the clothesline cutting incident an attorney representing the plaintiff's predecessor in title called on the defendant and wanted to get a price on the driveway so that plaintiff's parents, the then owners, would buy it; he was told the driveway was not for sale. The final request was that the defendant be declared owner of the driveway as an appurtenance to her parcel of land, and that neither the plaintiff nor any of his predecessors in title had acquired ownership of the driveway by open, notorious, hostile and continuous possession of the driveway for fifteen years.

■■ In her brief the defendant concedes that many of her requests are in part conclusions of law. A finding containing a conclusion of law cannot stand if that conclusion is inconsistent with the facts found which must support it. *Thompson* v. *Smith*, 119 Vt 488, 497, 129 A2d 638; *Enosburg Falls* v. *Hartford Ins. Co.*, 117 Vt 114, 116, 85 A2d 577. Therefore, unless the conclusions in the requests were consistent with the facts found by the chancellor, he was not bound to comply

with the requests. If requests are in part unsound compliance therewith by the chancellor is not required. *Brown* v. *Gallipeau*, 116 Vt 290, 295, 75 A2d 694. That the conclusions in these requests did not meet the test of consistency appears from the findings as made.

■ Further than that, a comparison of the requests themselves discloses that the evidence in support of their factual content was conflicting, or susceptible of opposing inferences. This is confirmed by an examination of the transcript. With the facts at issue in these requests in conflict, the chancellor, acting fairly and reasonably, was free to find contrary to the defendant's requests. *Holton* v. *Ellis*, 114 Vt 471, 485, 49 A2d 210.

■■ The evidence as to the alleged transaction with the attorney purportedly representing the plaintiff was based solely on the testimony of the defendant, which the chancellor was not required to believe. *Scott's Exr.* v. *Beland*, 114 Vt 383, 396, 45 A2d 641. Even if the testimony were believed this evidence was material and had probative force only if the agency relation existed between the attorney in question and the plaintiff's predecessor in title. The fact that the attorney was at the time state's attorney of the county makes the evidence at least equivocal as to his capacity when making his alleged visit. Furthermore, nothing is better established in the law than that agency cannot be proved by the mere declarations of the alleged agent made out of court. *Hendrickson* v. *International Harvester Co.*, 100 Vt 161, 165, 135 A 702; *Taplin & Rowell* v. *Harris*, 88 Vt 15, 18, 90 A 956; *Prouty* v. *Nichols*, 82 Vt 181, 184, 72 A 988. The request was properly denied.

■ Moreover, in briefing these exceptions to the failure of the chancellor to find as requested, nothing is put forward by the defendant in her brief by way of demonstration that the evidence in the case supports any of her requests. This Court will not search the record to sustain an exception. *Holton* v. *Ellis, supra*, 114 Vt at 485, 49 A2d at 220. For all of these reasons the exceptions to the failure of the chancellor to find as requested are not sustained.

■ The principal contention of defendant's brief in treating the chancellor's failure to find as requested is actually directed to the proposition that the findings do not support a decree ousting the defendant from her easement by adverse possession. The defendant further devotes a separate section of her brief to the same proposition. Her position is clouded by the situation with respect to her exception to the decree itself. The chancellor reserved exceptions to both sides in the decree. In the bill of exceptions prepared by the defendant and signed by the chancellor no mention is made of an exception to the decree. This situation is recognized in the defendant's brief where she states that the record does not show that an express exception to the decree was taken. Her argument seems to be that the issue of the validity of the decree is raised by the content of her requests to find which the chancellor denied with exceptions. A strict treatment of the exceptions as presented would confine the defendant to the chancellor's failure to find as requested, excepted to and briefed. However, since the decree itself records that the chancellor gave both defendant and plaintiff an exception to it, and since the arguments of the defendant's briefs are addressed to the validity of the decree, we will examine the question. See *Thompson* v. *Smith*, 119 Vt 488, 497, 129 A2d 638.

■ The question presented for decision is whether or not the findings support the decree. With no exceptions to the findings briefed for our consideration the question of whether the findings are in turn supported by the evidence is not before us. *McAllister* v. *Northern Oil Co., Inc.*, 115 Vt 465, 467, 64 A2d 31.

■ To provide support for the decree the findings must disclose facts amounting to an ouster of the dominant owner of the easement by means of open, notorious, continuous, hostile and adverse possession of the driveway maintained for the fifteen year statutory period. The possession must be unequivocal and incompatible with possession and use by the dominant owner. *Scampini* v. *Rizzi*, 106 Vt 281, 286, 172 A 619.

The defendant urges that the facts here found disclose a situation of mere non-user, which will not work an ouster

under the rule of our cases so recently restated in *Scott* v. *Leonard*, 119 Vt 86, 105, 119 A2d 691. From the facts found we here have more than attempted ouster based on mere non-user. Here the plaintiff's predecessors "unfurled their flag" as early as 1933 and 1934 by putting up a clothes line barrier across the right of way. This was an unequivocal act whose purpose was understood by defendant's predecessors in title, because the facts disclose that on several occasions they cut down the lines. Even prior to the erection of the clothes line barrier a controversy over the use of the easement was found to exist between the then owners. Moreover, at least as early as 1941 the line of the right of way as claimed by the defendant was crossed by a stone wall extending from the back of the Percival house rearward twenty or twenty-five feet.

Taking all these facts, together with the chancellor's finding that all travel from defendant's property across plaintiff's property ceased sometime prior to 1927, the inference is clear that whatever the physical nature of the barriers to travel erected on plaintiff's land they were successful. This is the state of facts distinguishing this case from *Scampini* v. *Rizzi, supra*, 106 Vt 281, 172 A 619; *Sabins* v. *McAllister*, 116 Vt 302, 76 A2d 106, and *Scott* v. *Leonard, supra*, 119 Vt 86, 119 A2d 691. The chancellor found that there were acts unequivocally directed at excluding owners of the defendant's premises from the easement; that these acts accomplished their purpose; that the owners of defendant's property knew all about them and their purpose; and that their exclusive effect continued for the statutory period.

In *Scampini* v. *Rizzi, supra*, 106 Vt 281, 172 A 619, the driveway in question was used from time to time by the plaintiffs and never obstructed for the passage of vehicles until a fence was erected by the defendant some five years prior to suit. This, of course, was an insufficient period of obstruction to establish adverse possession. Insofar as construction of a porch intruded some thirteen inches into the driveway for the statutory period, that portion of the easement was held to be extinguished. Contrary to the instant case, the facts in the Scampini case disclose that the defendant failed to oust or bar the plaintiffs from the easement for the statutory period.

The case of *Sabins* v. *McAllister, supra*, 116 Vt 302, 76 A2d 106, relates to an easement in which the plaintiffs and defendants held a tenancy in common. In such a situation, use of the easement by the plaintiffs was presumed to be made under the authority of their tenancy and could not work an ouster of the defendants without an unequivocal showing of intent to bar the defendants from their usage rights under that tenancy. The barrier to use of the easement by the defendants in this case was a fence between the lots, maintained by the defendants, not the plaintiffs. The question of obstructing access to the easement related, therefore, to abandonment rather than ouster. For that reason the holding of the case, relating as it does to non-user and abandonment, is not in point here.

The defendants in *Scott* v. *Leonard, supra*, 119 Vt 86, 119 A2d 691, on a controverted state of facts, failed to persuade the chancellor that they had effectively excluded the plaintiffs for the statutory period. There existed, as in the Sabins case, a cotenancy in the easement which required the defendants to show ouster of the plaintiffs in the face of a presumption that usage by the defendants was not adverse to the plaintiffs but based on the rights of joint ownership. In this case, also, the barrier erected across the right of way had not persisted for the statutory period, having been in existence only three years at the time of bringing suit. The case may be distinguished from the one at hand on its facts.

▓ The findings and the inferences legitimately to be drawn from them place this case among those represented by *Dwinell* v. *Alberghini*, 115 Vt 394, 62 A2d 124. In that case, as in this one, the chancellor's findings disclosed a state of facts extinguishing an easement. In the face of this, the facts found would not support the defendant's requests for findings containing the conclusion of law that there was no ouster by virtue of adverse possession on the part of plaintiff and his predecessors in title. *Merchants Mutual Casualty Co.* v. *Izor*, 118 Vt 440, 443, 111 A2d 732; *Nelson* v. *Travelers Ins. Co.*, 113 Vt 86, 99, 30 A2d 75. We must construe the findings to support the decree if this can reasonably be done, and we must assume in favor of the decree also that the chancellor

inferred such facts from the other facts found as he ought to have done, or might fairly have done. *Anton* v. *Fidelity & Casualty Co.*, 117 Vt 300, 304, 91 A2d 697.

The defendant also complains that the chancellor in his decree described the easement involved as a "reservation" in the deed and not as an easement appurtenant to her land. From the facts found it is clear the chancellor treated the easement as appurtenant to the defendant's land, and we have so regarded it in the disposition of this appeal. Moreover, as the defendant correctly states in her brief, an easement appurtenant is extinguished by adverse possession. Since adverse possession has been properly found by the chancellor, any error in labelling the easement is harmless. *Ripley* v. *Spaulding*, 116 Vt 531, 532, 80 A2d 375.

In the light of the foregoing, it is apparent that the decree is supported by the findings; defendant takes nothing by her exceptions.

*Decree affirmed.*