STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Barsher Right-of-Way Waiver Application[1] | } | Docket No. 96-5-08 Vtec |
| (Appeal of Barsher) | } | |
| | } | |

Decision and Order on Motion for Summary Judgment

Appellants Louis and Lorraine Barsher appealed from a decision of the Development Review Board (DRB) of the Town of St. Albans, denying Appellants' application for approval under § 401[2] of a proposed right-of-way to access a proposed 2-lot subdivision. Appellants are represented by Jesse D. Bugbee, Esq.; the Town is represented by David A. Barra, Esq.

Appellants have moved for summary judgment.[3] The following facts are undisputed unless otherwise noted.

[1] The caption of this appeal has been changed from the caption assigned at the time the Notice of Appeal was filed. The original caption was "In re Barsher 2-Lot Subdivision Application;" however, the application before the DRB, and hence before the Court in this appeal, was instead for a waiver under § 401 for a proposed right-of-way to access the proposed 2-lot subdivision. The application for approval of the subdivision is not before the Court in this appeal.

[2] All citations refer to sections of the Town of St. Albans Zoning Bylaws and Subdivision Regulations (the 2006 Ordinance) unless otherwise noted; only the 2006 version of the ordinance has been provided to the Court in connection with the present motions.

[3] The sole question in the Statement of Questions is posed in terms of whether the DRB erred in various ways. However, the Town of St. Albans has not adopted the procedures necessary for appeals from its decisions to be on the record. Compare 24 V.S.A. §§ 4471(b), 4472(a) (third sentence), and V.R.E.C.P. 5(h) (explaining on-the-record appeals), with 24 V.S.A. § 4472(a) (second sentence), and V.R.E.C.P. 5(g) (explaining de novo appeals). For the purposes of the present motion, this decision will treat that question as if it had been stated in de novo terms. As the appeal is resolved on the basis of this motion, we will not require Appellant to file a restated Statement of Questions.

1

Appellants own an approximately 3.02-acre property containing two existing seasonal residences at the addresses of 100 and 102 East Solomon Road[4] in the Lakeshore zoning district.[5] The residences on the lot were constructed in 1976 and 1977, prior to the adoption of a zoning ordinance prohibiting more than one primary structure on a single lot.[6] Appellants' lot is nonconforming with § 314(4) of the current zoning ordinance, as it contains two primary dwellings on a single lot. See §§ 314(4) ("Any project with more than one primary structure on a lot . . . must meet the requirements of a PUD."); 320 (Nonconforming Uses). As a pre-existing, nonconforming lot, it is entitled to continue in its present configuration.[7] See 24 V.S.A. § 4303(13); 2006 Ordinance, § 320.

East Solomon Road is a 20-foot-wide private right-of-way (private road) in existence since at least 1966, prior to the first adoption of the Town of St. Albans zoning and subdivision ordinance. No information has been provided in connection with these motions to allow the Court to determine whether East Solomon Road has ever been approved as a right-of-way under § 401, or in connection with the approval of a subdivision served by the road, see § 221(2). In addition to the two seasonal dwellings located on Appellants' lot, East Solomon Road serves at least six other lots, each with a dwelling constructed prior to the adoption of zoning. Between approximately 2003 and

---

[4] East Solomon Road also is or was formerly known as "Gellis Road." Statement of Stipulated Facts, at ¶ 2. For the purposes of clarity, this decision will refer to it only as East Solomon Road.

[5] The DRB minutes from April 10, 2008 indicate that the property is also in the Flood Hazard overlay district. As no issues have been raised as to the project's compliance with the Flood Hazard overlay district's requirements, that district's requirements will not be further discussed. See § 315(1).

[6] The parties do not dispute that the residences were built prior to the prohibition of more than one primary structure on a single lot.

[7] While the 2006 Ordinance regulates nonconforming uses and structures, it does not address how nonconforming lots are to be addressed, contrary to the requirement of 24 V.S.A. § 4412(7).

2

2008, all six landowners have received approvals to replace those dwellings, without any requirement to obtain approval under § 401 for the use of East Solomon Road.

East Solomon Road provides access to Samson Road, a town highway. Appellants' lot is separated from East Solomon Road by a narrow strip of land owned by a neighboring property owner identified on the Site Plan as "Schwartz." Appellants' property has access to East Solomon Road by a driveway which crosses the Schwartz property. When Appellants purchased the lot at issue in 1984, the deed included the right to use East Solomon Road to access the residences,[8] but the right-of-way across the Schwartz property has not been shown on a survey connected with that 1984 deed. The existing driveway from East Solomon Road to Appellants' property is a single shared driveway across the Schwartz property and onto Appellants' property; it splits into two driveways quite close to the two dwellings on Appellants' property.

The 2006 Ordinance does not provide definitions defining or distinguishing among a public road, a private road, or a private right-of-way. The present case does not implicate any issues regarding "public" roads, which are those taken over and maintained by the Town.[9] However, while neither the ordinance nor the statute provides definitions distinguishing a "private road" from a private "right-of-way," the 2006 Ordinance uses both of the terms "private road" and "right-of-way," even though the statute only uses the term "right-of-way" (or "easement") in this context and does not use the term "private road."

---

[8] The DRB minutes refer to the proposed driveway as not being a deeded right-of-way; however, the deed language refers to the entire right-of-way as "together with the twenty foot (20') 'Right of Way' to be used in common with others leading from the Town Road, to the above lot . . . ."

[9] See 19 V.S.A. § 1(21) (defining "Town highways" as those maintained by the Town); e.g., Okemo Mountain, Inc. v. Town of Ludlow Zoning Bd. of Adjustment, 164 Vt. 447, 454 (1995).

3

The statute, 24 V.S.A. § 4412(3),[10] allows municipalities to permit land development on lots that do not have frontage on a public road,

> provided that access through a permanent easement or right-of-way has been approved in accordance with standards and process specified in the bylaws. This approval shall be pursuant to subdivision bylaws . . . or . . . through a process and pursuant to standards defined in bylaws adopted for the purpose of assuring safe and adequate access. . . .

Section 4412(3) also requires that "any permanent easement or right-of-way providing access to such a road or waters shall be at least 20 feet in width." All of the provisions of § 4412 apply in every municipality, "[n]otwithstanding any existing bylaw."

On the one hand, § 400(1) of the 2006 Ordinance prohibits land development "unless it has an adequate means of access[,] defined as either: (A.) [f]rontage . . . on a maintained public road, private road or by means of a permanent easement at least 60 feet wide to a maintained public road . . . ." On the other hand, § 400(1) refers to an exception to be found in § 401, the first sentence of which provides that:

> No land development is permitted on lots that do not have frontage on a public road, unless a permanent right-of-way, of at least twenty feet in width and approved by the Development Review Board, provides access to not more than two single-family dwellings.

The Court is required to apply zoning ordinances as they are written. E.g., In re Appeal of Clark, No. 2-1-01 Vtec, slip op. at 4 (Vt. Envtl. Ct. Jan 4, 2002) (Wright, J.); In re Appeals of Waite, Nos. 139-6-00 Vtec, 183-8-00 Vtec, slip op. at 1 (Vt. Envtl. Ct. May 23, 2001) (Wright, J.); In re Appeals of Deso, Nos. 131-8-97 Vtec, 156-9-97 Vtec, slip op. at 3 (Vt. Envtl. Ct. Dec. 28, 1998) (Wright, J.). As written, § 401 prohibits private roads or rights-of-way that provide access to more than two single-family dwellings.

This may be the entirely inadvertent result of the triple or quadruple negatives in the quoted sentence of § 401, as other sections in the 2006 Ordinance appear to allow

---

[10] 24 V.S.A. § 4412(3) is the recodification of 24 V.S.A. § 4406(2), which was repealed in 2004.

4

whole subdivisions to be served by private roads. As written § 400(1) allows land development on lots with frontage only on a private road; §§ 212(3) and 220(4) of the subdivision section of the 2006 Ordinance also contemplate private subdivision roads, although they must be designed to town standards, § 221(2). Significantly, nothing in the subdivision standards restricts subdivisions using private roads to having only one or two lots. See generally §§ 210–213, 220–221.

East Solomon Road is an existing private road or right-of-way, at least twenty feet in width, which provides access to at least eight single-family dwellings. East Solomon Road may be nonconforming with 24 V.S.A. § 4412(3) if it has not been approved as a right-of-way that accesses lots without frontage on a public road (or public waters). East Solomon Road may be nonconforming with § 401 of the 2006 Ordinance, as a right-of-way serving lots without frontage on a public road but providing access to more than two single-family dwellings. East Solomon Road may also be nonconforming with § 400(1)(A) of the 2006 Ordinance, if it has a right-of-way less than sixty feet in width, if private subdivision roads are required to have a sixty-foot right-of-way. See § 221(2).

Appellants have applied to subdivide the property into two lots of approximately 1.51 acres each, so that each lot contains one of the existing dwellings. The subdivision of the property constitutes "land development" as defined in Part V, "Definitions," of the 2006 Ordinance. No changes are proposed to the structures on the lots, or regarding their access to East Solomon Road via the right-of-way crossing the Schwartz property, or regarding their access by the private road or right-of-way of East Solomon Road to the public road.

5

Although the proposed configuration of the two proposed lots is unusual,[11] it is designed so that the proposed subdivision meets all of the dimensional requirements for the Lakeshore zoning district. Indeed, by separating the two primary structures onto two dimensionally-conforming lots, the proposal eliminates the lot nonconformity. Under the 2006 Ordinance, two-lot subdivisions that meet all the requirements of the district require only a permit from the Zoning Administrator, as opposed to the more extensive approval from the DRB that is required for subdivisions of three lots or more. Compare § 203 (Two-Lot Subdivisions), with §§ 210–213 (Three or More Lot Subdivisions).

The Town argues that the proposal increases the nonconformity of East Solomon Road, which is a private road serving at least eight dwellings, and that the proposed subdivision therefore requires a variance. See § 320(2) (allowing expansion or alteration of a nonconforming use "upon approval of a variance"). If East Solomon Road is nonconforming at all, as a private road serving more than two single-family dwellings, or for any other reason, it is a pre-existing nonconformity entitled to remain, but not to be expanded. See § 320. However, the proposed subdivision does not alter the nonconformity of East Solomon Road, as the test is not the number of lots accessed by the private road, but instead is the number of single-family dwellings accessed by the private road. That number is the same both before and after the proposed subdivision; the proposal therefore does not alter or increase the nonconformity of East Solomon Road.

All that needs to be approved under § 401, therefore, is the right-of-way providing access from East Solomon Road to the two existing dwellings on Appellants'

---

[11] Lot 1, containing the modular home, is proposed as a U-shaped lot running along the southerly, westerly, and northerly boundaries of the combined lot; Lot 2, containing the mobile home, is a roughly square lot surrounded on its southerly, westerly and northerly sides by Lot 1. No issues as to the configuration of the 2-lot subdivision are before the Court in the present appeal.

6

property.   It appears that the proposed driveway meets the criteria in the 2006 Ordinance[12] for approval under § 401, if it is or will be a deeded right-of-way, as it is proposed to be twenty feet wide and to serve only two single-family dwellings.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment is GRANTED.  This decision concludes the issues raised by the Statement of Questions, and hence concludes this appeal, unless the parties wish the Court to proceed with the merits of the § 401 application only for the right-of-way over the Schwartz property.  A telephone conference has been scheduled (see enclosed notice) to determine whether Appellants wish to amend the Statement of Questions to have the Court proceed with the merits of the § 401 application, or whether, in light of footnote 12, the parties prefer to conclude this matter in this Court and leave it to the DRB to rule on the § 401 application for the right-of-way from East Solomon Road to the project property.  It would in any event be for the Zoning Administrator thereafter to rule on an application for the subdivision's permit under § 203 (Two-Lot Subdivisions); that application is not before the Court in this appeal.  If the parties agree that this appeal is concluded, they may file a proposed judgment order prior to the conference date, so that the conference may be canceled.

Done at Berlin, Vermont, this 14th day of April, 2009.

_____
Merideth Wright
Environmental Judge

---

[12] This decision does not address whether § 401 meets the requirements of 24 V.S.A. § 4412(3) that the bylaws provide standards and a process for the DRB to follow in making this determination, either in the subdivision bylaws or elsewhere in the zoning or other municipal bylaws.  See, e.g., In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶¶ 13–14.